## Reed, Appellant, *v.* Reed.

*Divorce—Nonresidence of libelant—Evidence—Domicile.*

1. A libel for divorce will be dismissed because of the nonresidence of the libelant, where it appears that the libelant left the state of Pennsylvania twenty years before the libel was filed, that with the exception of occasional visits to relatives and a stay of three months long before the libel was filed, he had never returned to the state, that he had served for ten years in the militia of another state, had voted at a municipal election therein, and that when he enlisted as a soldier in the Spanish war he gave his residence as in New York.

2. The presumption is that where a person lives, there is his domicile, especially where he has no family elsewhere, and while no particular length of residence is necessary to fix a person's domicile, yet in the absence of any avowed intention and of acts which indicate the contrary intention, a long continued residence is regarded as a controlling circumstance in determining the question of domicile.

Argued Oct. 23, 1914. Appeal, No. 191, Oct. T., 1914, by plaintiff, from decree of C. P. No. 2, Phila. Co., Sept. T., 1913, No. 226, dismissing libel in divorce in case of Eberr R. Reed v. Caroline R. Reed. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Libel in divorce.

From the record it appeared that the case was referred to Charles J. Hepburn, Esq., as master, who recommended a dismissal of the libel on the ground of nonresidence of the libelant.

On exceptions the court dismissed the libel on the ground that the libelant had not resided for one year in the state prior to the filing of the libel.

*Error assigned* was decree dismissing the libel.

*Edward B. Martin,* for appellant.—The libelant's travels were so wide and so varied, that it is difficult to see how he could be found ever to have definitely given up his domicile of origin or his citizenship in this state. There is nothing in the evidence in this case to show that he ever did so intentionally. The fact of his continuous wandering is proof against it: Ames v. Ames, 7 Pa. Superior Ct. 456.

No printed brief for appellee.

OPINION BY TREXLER, J., February 24, 1915:

This is an action of divorce. The master, to whom the case was referred, found as a fact that the libelant was not a citizen of the commonwealth of Pennsylvania and recommended a dismissal of the libel. The learned court below refused the divorce, but upon the ground, not that the libelant was not a citizen of the commonwealth of Pennsylvania, but that he had not resided a year in the state prior to the filing of the libel.

We think the master was right in finding the libelant was not a citizen of the commonwealth of Pennsylvania and as this is fatal to the proceedings, we need not discuss the other question involved. We are led to take this view by reason of the following facts:

It appears that libelant left Pennsylvania in 1893 and went to New York for the purpose of bettering his condition. Almost immediately he enlisted in the New York militia for the term of five years. Shortly afterward he went for a time to Springfield, Massachusetts, returning from there to Albany where he remained until the spring of 1897 at which time he returned to his father's

home in Philadelphia for three or four months and returned to Albany the summer of the same year, remaining there until the fall of 1900, during which time he served nine months in the Spanish-American War, entering the service at Albany and mustering out at the same place. After the expiration of his term of enlistment in the militia, he re-enlisted for a further term of five years and served the full term. In the fall of 1900 he went to Newburgh, New York, for a few months, thence in 1901 to White Plains, New York, remaining there until 1907, with the exception of six or eight months in New York City and a visit of two weeks to Philadelphia and six months in New Brunswick, New Jersey, on a special job. From White Plains he went to New York City for two years, thence to Oyster Bay for a winter, thence to White Plains in 1910. Here he remained until the fall of 1912. He then went to New York City, where he still resides. Some of his clothes he left in Philadelphia.

During the twenty years that elapsed between the date he left Philadelphia and the filing of his libel, he resided for upwards of seventeen years in the state of New York, about four and one-half years in Albany, eight years at White Plains, three and one-half years in New York City and six months each at Newburgh and Oyster Bay. Of the remaining three years, two years were spent in Springfield, Massachusetts.

In all that time there was but one occasion when he' spent any considerable time in Philadelphia, the three or four months in 1897 when he came from and returned to Albany. His remaining visits, in the language of the master, were apparently the customary visits of an unattached man to his father's home during holiday seasons and these ceased with his father's death. When he enlisted in the United States volunteers, he gave his residence as Albany and returned to Albany when his term of enlistment expired. He voted at a municipal election in White Plains.

The master, from these facts, concluded there was no other conclusion warranted than when libelant left Philadelphia for New York State it was with the intention of residing there an indefinite length of time, or so long as he should be able there to earn a livelihood and that he abandoned his domicile in Pennsylvania in so doing. The court to the contrary held there was not sufficient evidence to warrant the conclusion that libelant had lost his domicile of origin.

Domicile does not depend upon any particular fact, but upon whether all the facts taken together tend to establish the fact of a fixed certain and permanent residence. A special or temporary purpose is not sufficient: Hunnings v. Hunnings, 55 Pa. Superior Ct. 261; Hindman's Appeal, 85 Pa. 466.

A mere floating intention to return to a former home or to live elsewhere at some future period unfixed and contingent upon circumstances, as upon an indefinite restoration to health, or when one's fortune has been made, will not prevent the acquisition of a domicile at the new abode: Minor's Conflict of Laws, p. 117.

The acquisition of domicile may depend upon the intention of the individual, but this intention may be shown more satisfactorily by acts than declarations. In Shelton v. Tiffin, 6 Howard, 163, it was held that an exercise of the right of suffrage was conclusive upon the subject, although there are decisions to the contrary: 10 Am. & Eng. Ency. of Law (2d ed.), p. 25. But as the right of suffrage is predicated upon citizenship, it would seem in the absence of an explanation to the contrary that the person exercising it, had acquired a new domicile. "The question of domicile may be often determined by the place where the person exercises the right of suffrage:" Commissioners of Dauphin County v. Banks, 1 Pearson, 40.

The intention of the libelant was not clearly expressed and indicated that Philadelphia should be his home only in case of certain contingencies. "My home

whenever I wanted to come back, was with my brother-in-law." "My home when I am not doing anything is right here in Philadelphia."

The presumption is that where a person lives, there is his domicile, especially where he has no family elsewhere, and while no particular length of residence is necessary to fix a person's domicile, yet in the absence of any avowed intention and of acts which indicate the contrary intention, a long continued residence is regarded as a controlling circumstance in determining the question of domicile: 10 Am. & Eng. Ency. of Law (2d ed.), p. 23.

The facts as stated above do not convey to us the idea that plaintiff during his absence retained his citizenship in Pennsylvania. His absence from Philadelphia was not in the nature of a temporary sojourn. He may have intended some day to return there just as a man who started active life as a country boy may have the intention in his declining years to return back to the old farm. We cannot draw from the facts that he had the abiding idea that Philadelphia was his home. They lead us to a contrary conclusion.

As stated before, the other question involved need not be discussed.

Decree affirmed.